**FILED**
**CLERK**

12/28/2018 3:24 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
VIRGILIA PERALTA DE GONZALEZ,

                Plaintiff,

      -against-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                Defendant.
------------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
16-CV-06723 (JMA)

**APPEARANCES**

Sharmine Persaud
Law Office of Sharmine Persaud
675 Broadway
Massapequa, NY 11758
631-777-5440
*Attorney for Plaintiff*

Sean P. Greene
United States Attorney's Office, EDNY
271 Cadman Plaza East, 7th Floor
Brooklyn, NY 11201
718-254-6484
*Attorney for Defendant*

**AZRACK, United States District Judge:**

Plaintiff Virgilia Peralta De Gonzalez ("plaintiff" or "De Gonzalez") seeks review of the final determination by the Commissioner of Social Security, reached after a hearing before an administrative law judge, denying plaintiff disability insurance benefits under the Social Security Act. The case is before the Court on the parties' cross-motions for judgment on the pleadings. Because the administrative law judge's decision was supported by substantial evidence and applied the proper legal standards, plaintiff's motion for judgment on the pleadings is DENIED, and defendant's cross-motion is GRANTED.

# I. BACKGROUND

## A. Procedural History

On July 23, 2015, plaintiff filed for disability insurance benefits with the Social Security Administration ("SSA"), alleging disability as of August 15, 2014 due to systemic lupus erythematosus ("SLE"); postinflammatory pulmonary fibrosis; rheumatoid arthritis in the hands, shoulders, knees, hips and back; gastroesophageal reflux disease ("GERD"); hypertension; and calcium deficiency. (See Tr. 124–125, 182.[1]) Following denial of her claim, plaintiff requested a hearing and appeared with her attorney for an administrative hearing before Administrative Law Judge Alan B. Berkowitz (the "ALJ") on May 2, 2016. (Tr. 514–47.)

In a decision dated July 5, 2016, the ALJ denied plaintiff's claim, finding that although plaintiff suffers from severe, non-listing level impairments of lupus, rheumatoid arthritis, and pulmonary fibrosis, she was not disabled because she still retained the residual functional capacity ("RFC") to perform sedentary work that would allow for "a repositioning break of 2 minutes after 30 minutes of sitting"; occasional postural activity; no more than occasional exposure to temperature extremes, humidity, and concentrated fumes; and no work in proximity to heights or dangerous machinery. (Tr. 23–32.) The ALJ determined that these limitations would preclude performance of plaintiff's previous employment, but there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. 30–31.)

Plaintiff filed a timely request for review before the Appeals Council. (Tr. 14–16.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on November 9, 2016. (Tr. 1–5.) This appeal followed.

---

[1] Citations to "Tr." refer to pages of the certified administrative record filed by the Commissioner at Docket Numbers 24 and 25.

## B. Plaintiff's Background and Testimony

Plaintiff was born in the Dominican Republic on December 24, 1966 and was 48 years old when she filed the instant application for benefits. (Tr. 124, 520.) She completed high school in the Dominican Republic and had past work experience as a sewing machine operator and a home health aide. (Tr. 176, 195–98, 520, 523–25.) She left her job as a home health aide in August 2014 and has not worked since. (Tr. 175, 182, 195–98, 524–25.)

As part of her application for disability insurance benefits, plaintiff filled out two function reports, dated October 26, 2014 and August 11, 2015. (Tr. 153–60, 247–57.) Therein plaintiff described her daily activities like cooking, cleaning, shopping, watching television, reading, and sewing; and functional limitations such as becoming tired when walking up one flight of stairs or walking a lot, and reaching due to pain in her shoulders. (Id.) She further indicated that when she is in pain, she finds it difficult to dress herself, shower, bathe, dry her hair, sit and stand from the toilet, sew, or hold newspapers or magazines. (Tr. 154–55, 157, 248.)

At the May 2, 2016 administrative hearing, Plaintiff testified through a Spanish interpreter but indicated that she understood and could read some English, and that she spoke English at one of her past jobs. (Tr. 519–20, 533–34.) She testified that she left her last job at Utopia Home Care because "[she] wasn't feeling well, [she] was tired, in pain and [she] had pain in [her] hands." (Tr. 524.) Prior to her work as a home health aide, plaintiff worked in a factory sewing clothes, but she testified she could no longer perform that job because she had to sit for eight to ten hours and pull fabric through a machine. (Tr. 525–26, 538–39.)

Plaintiff testified that she was diagnosed with lupus in 2003 and that she has rheumatoid arthritis in all her joints. (Tr. 526–27.) She sees Dr. Andrew Lin (an internist) and Dr. Alpa Desai (a pulmonologist), as well as a gastroenterologist and a rheumatologist. (Tr. 527–28.) Plaintiff

takes the following medications: Aleve for pain; Amlodipine for hypertension; Azathioprine (Imuran) to prevent liver damage from lupus medications; as well as calcium, Nexium, and Plaquenil (hydroxychloroquine) for rheumatoid arthritis and lupus. (Tr. 185–89, 256–57, 526–27.)

Plaintiff further testified about her physical conditions. She stated that she could neither sit nor stand for more than two hours at a time. (Tr. 531.) She has difficulty walking on stairs because her "knees hurt and [she] get[s] tired." (Tr. 521.) She feels pain in her hands, elbows, arms, legs, and hands, which she described as a "constant," "stabbing pain" that she feels every day. (Tr. 526–27, 530.) Due to Raynaud's syndrome, plaintiff testified that she cannot be in the cold or touch cold things without gloves, and in the hot weather her hands turn colors, swell, and the tips of her fingers are painful. (Tr. 536–37.) She also testified that she has difficulty gripping with her hands and reaching overhead. (Tr. 531.)

Finally, regarding her daily activities, plaintiff testified that she does a little housework, including "cook[ing], wash[ing] the dishes just little by little, sweep[ing] the floor, [and] mak[ing] [her] bed." (Tr. 531–32.) She mostly shops for food alone but needs to get a cart and sometimes gets dizzy. (Tr. 532.) She is able to use her cellphone, knows how to use a computer "a little," and can access the internet from her cellphone. (Tr. 534–35.)

## C. Medical Evidence

### 1. Dr. Andrew Lin – Internal Medicine

Dr. Andrew Lin is the plaintiff's treating physician at Hudson River Health Care ("HRH") and the Court reviewed his records, together with those of associated physicians and nurse practitioners at HRH. Plaintiff's active problems are listed as GERD, body aches, chills (without fever), otisis media, cough, rhinitis, Raynaud's syndrome, Lupus, and essential (primary)

4

hypertension.  (Tr. 456.)  For dates during the relevant period that plaintiff saw Dr. Lin, he found that she was in "no acute distress," was "well appearing," that she had regular lung capacity, and that she was "alert and oriented."  (Tr. 355, 367, 460.)  However, some of Dr. Lin's prior treatment notes, from what appears to be 2013, are handwritten and illegible.  (Tr. 502–05.)

Plaintiff also had various appointments at HRH between November 2014 and February 2016 for routine gynecological exams, individual maladies like sore throats, breast cancer screenings, and prescription refills.  (Tr. 269–71, 289–99, 300–05, 353–64; 465–67, 480–83.)

On April 21, 2016, Dr. Lin examined plaintiff and she complained of chronic joint pain from lupus, with current pain of 4 on a scale of 0-10.  (Tr. 459–61.)  He found tenderness over the distal interphalangeal (DIP) and PIP joint, but systems examinations were otherwise normal.  (Tr. 460.)  On that same date, Dr. Lin filled out a "Lupus (SLE) Medical Source Statement," ("MSS") indicating that plaintiff's condition met the American College of Rheumatology criteria for SLE.  (Tr. 451–55.)  He gave her a "fair to poor prognosis" and opined that she was moderately limited in her activities of daily living, social functioning, and ability to complete tasks in a timely manner due to deficiencies in concentration, persistence, or pace.  (Tr. 452.)  Dr. Lin then estimated various functional limitations plaintiff would have if placed in a competitive work situation, including certain limitations on sitting and standing, lifting and climbing, as well as the need to take breaks and be off-task during the work day.  (Tr. 453–55.)  Dr. Lin did not opine on any limitations in plaintiff using her hands, fingers, or arms.  (Tr. 454.)

### 2.  Dr. Alpha Desai – Pulmonologist

There is one treatment note from plaintiff's pulmonologist, Dr. Desai, dated July 15, 2014.  (Tr. 346–49.)  Therein, Dr. Desai summarized plaintiff's medical history of Lupus and Raynaud's disease and indicated that she was "doing well from an exercise perspective" and "maintained on

Azathiaprine/Plaquenil for joint symptoms." (Tr. 346.) Dr. Desai took note of her present complaints of dizziness and a headache wrapping around her head, which started recently. (Id.) Her breathing was "fine" and she reported that plaintiff "continues to have occasional left sided chest pain when 'doing lots of things' (eg. busy day at work and running the household)." (Id.)

Dr. Desai also reviewed various prior tests and continued plaintiff's medications of Plaquenil and Azthriaprine, advising that she follow up with "her PCP if dizziness and headache persist." (Tr. 349.) She ordered another pulmonary function study, which produced normal results with a mildly decreased diffusion capacity. (Tr. 350–52.)

Plaintiff returned to Dr. Desai on July 28, 2015 to have her fill out an RFC Questionnaire. (Tr. 445–48.) In summary, Dr. Desai listed plaintiff's only symptom as "chest pain on occasion with heavy exertion" and indicated that her prognosis was guarded, as there had been a slight decline in diffusion capacity over the year. (Tr. 445–46.) She opined that plaintiff could tolerate moderate work stress, walk several city blocks without rest, and stand or walk about four to six hours in an eight-hour workday. (Tr. 446–47.) Dr. Desai assessed no limitation in plaintiff's ability to sit, lift, or carry, nor any restrictions for working around dust, high humidity, or extreme heat or cold. (Tr. 447–48.) However, Dr. Desai opined that plaintiff likely would be absent from work about two days per month, and sometimes would need to take unscheduled breaks during the workday without specifying the duration or frequency of the breaks. As an explanation, Dr. Desai wrote that plaintiff "gets chest pain with trying to do multiple tasks sequentially." (Id.)

### 3. Other Records

 The administrative record includes medical records from other doctors and facilities, including an emergency room visit on October 8, 2014. (Tr. 372–87.) During this visit plaintiff complained about chest pain and reported occasional lightheadedness. (Id.) The hospital

performed various tests and diagnosed plaintiff with nonspecific chest pain, releasing her the same day.  (Id.)  In addition, there are some rheumatology records from 2013 and 2014 that identify plaintiff's SLE, Vitamin D deficiency, and Raynaud's syndrome.  (Tr. 331–39.)  At both visits, plaintiff's rheumatologist determined that her SLE was "stable with minimal disease activity."[2] (Tr. 332, 335.)  There is also an office record from an ophthalmologist, Dr. Faye Knoll, who provided plaintiff with a new glasses prescription in January 2016.  (Tr. 512–13.)  Finally, plaintiff underwent an upper endoscopy and colonoscopy, performed by Dr. Ellen Li on April 4, 2016, which showed an entirely normal colon.  (Tr. 449–50.)

### 4. Dr. Andrea Pollack – Consultative Examination

At the request of the Commissioner, plaintiff underwent an Internal Medicine Examination by Andrea Pollack, D.O., on November 12, 2014.  (Tr. 262–68.)  Plaintiff reported that she had lupus since 2003, which caused generalized pain that "comes and goes and is achy," fatigue and chronic chest pain that also "comes and goes," and occasional shortness of breath.  (Tr. 262.)  Her Raynaud's disease causes pain and discoloration of her hands in cold weather, for which she takes medication.  (Id.)  Plaintiff indicated she can: shower and dress daily; cook and shop four times per week; clean five times per week; and do laundry twice per week.  (Id.)  She also "watches tv, listens to the radio, reads, goes shopping and socializes with friends."  (Tr. 262–63.)

As part of her physical examination, Dr. Pollack noted that plaintiff used no assistive devices and needed no help changing for the exam or getting on or off the exam table.  (Tr. 263.)  Her hand and finger dexterity was intact and her grip strength was 5/5 bilaterally.  (Tr. 264.)  There were no identified issues in plaintiff's musculoskeletal, neurologic, or extremities.  (Id.)  The only identified physical limitation was that plaintiff was only able to squat "3/4 of full."  (Tr. 263.)  In

---

[2]  There is one additional rheumatology record from September 23, 2006, well before the relevant period.  (Tr. 238-45.)

addition, plaintiff's vision without glasses was 20/40 on the right, 20/50 on the left, and 20/40 for both eyes on a Snellen chart at twenty feet.  (Id.)

Dr. Pollack diagnosed plaintiff with decreased visual acuity of the left eye, lupus, fatigue, chronic chest pain, pulmonary fibrosis, and Raynaud's with a stable to fair prognosis.  (Tr. 264.) She then opined:

> On the basis of this evaluation, [plaintiff] is restricted in activities which require fine visual acuity of the left eye.  She should avoid heights, operating heavy machinery, activities which require heavy lifting, heavy carrying, or heavy exertion, and activities which may put her at risk for a fall.  She should avoid smoke, dust, and known respiratory irritants.  She should avoid cold temperatures as well and has a mild restriction in squatting.

(Tr. 265.)

### 5.  Dr. S Ali – Consultative Examination

On September 25, 2015, Plaintiff underwent a second Commissioner-requested Internal Medicine Examination by Dr. Shehzad Ali.  (Tr. 228–37.)  Plaintiff indicated that her lupus symptoms were "significantly at bay."  (Tr. 228.)  However, she stated that she still felt tired and fatigued after activities and could stand for no more than one hour before needing to sit down, rest, and lie down.  (Id.)  She further reported that she can lift about half a gallon of milk and sit for approximately one hour at a time.  (Id.)  In addition, she gets shortness of breath after climbing one flight of stairs, walking two blocks, or standing for about an hour, at which time she needs to sit down and rest which seems to help.  (Id.)  Finally, plaintiff complained about lower back pain that is "pretty much there all the time," and knee discomfort that hurts with activity but resolves with rest.  (Tr. 228–29.)

Plaintiff reported very similar daily activities: cooking four times a week; cleaning and laundry once a week; shopping two to three times per week; and showering and dressing herself daily.  (Tr. 229.)  She still watches television, reads, and listens to the radio.  (Id.)

Dr. Ali noted that plaintiff's vision without glasses was 20/70 on the right, 20/70 on the left, and 20/30 for both eyes on a Snellen chart at twenty feet. (Tr. 230.) Dr. Ali's musculoskeletal examination also revealed "mild discomfort and mild spasm in the paraspinal muscles in the lumbar region bilaterally"; sitting feels some pulling sensation of the lower back;" and "crepitus in bilateral knees." (Tr. 230–31.) The findings were otherwise normal, again including intact hand and finger dexterity with 5/5 bilateral grip strength. (Id.)

Dr. Ali diagnosed plaintiff with a history of lupus, pulmonary fibrosis, and knee pain, as well as back pain. (Tr. 232.) He determined her prognosis was stable and she has "mild restriction for climbing, walking, standing, bending, lifting, and carrying because of back pain." (Id.)

**D. Vocational Evidence**

Yaakov Taitz, Ph.D., a vocational expert (the "VE"), testified at the administrative hearing. (Tr. 540–46; see also Tr. 199–201.) The ALJ asked the VE to consider an individual of the same age, education, and work experience as plaintiff who has a residual functional capacity to perform sedentary work, with the following limitations:

> The individual can sit for a total of 30 minutes at which point would require a two-minute repositioning break, can occasionally bend, occasionally stoop, crouch, kneel, squat, climb. The individual would only occasionally be exposed to extreme cold, extreme heat, extreme humidity, concentrated fumes and other respiratory irritants, would not be exposed to heights or dangerous machinery.

(Tr. 541–42.) The VE testified that such a person could not perform plaintiff's past work, but she could perform sedentary jobs as a counter, document preparer, or order clerk. (Tr. 542–43.)

The ALJ then asked the VE to consider additional hypothetical limitations of occasional reaching, handling, fingering, and feeling with both hands. The VE testified that such a person could perform sedentary jobs as a surveillance system monitor, information clerk, and call out operator. (Tr. 544–45.) All of these jobs have at least 70,000 jobs in the national economy. (Tr. 542–45.)

### E. The ALJ's Decision

The ALJ issued his decision on July 5, 2016, applying the five-step process described below, pursuant to 20 C.F.R. § 404.1520. (Tr. 23–32.) At the first step of the analysis, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since her alleged onset date of August 15, 2014. (Tr. 25.) At the second step, the ALJ found that plaintiff has severe impairments of lupus, rheumatoid arthritis, and pulmonary fibrosis. (Id.) Turning to the third step, the ALJ determined that plaintiff's impairments, alone or in combination do not meet or medically equal the severity of any of the regulation's listed impairments. (Tr. 25–27.) Specifically, the ALJ considered Listing 14.02 for systemic lupus erythematosus ("SLE") and Listing 14.09 for inflammatory arthritis. (Id.)

The ALJ then addressed step four, first considering plaintiff's RFC. An RFC determination identifies what work a claimant can still perform, despite her limitations. See C.F.R. § 404.1545. The ALJ found that plaintiff had the RFC to perform sedentary work, except that she (1) requires "a repositioning break of 2 minutes after 30 minutes of sitting"; (2) can occasionally engage in postural activity; (3) can have no more than occasional exposure to temperature extremes, humidity and concentrated fumes; and (4) can never work in proximity to heights or dangerous machinery. (Tr. 27.)

In considering plaintiff's limitations, the ALJ made various observations about plaintiff's testimony and reviewed plaintiff's medical records. (Tr. 27–30.) The ALJ afforded "limited weight" to the MSS furnished by Dr. Andrew Lin, plaintiff's primary care physician because treatment notes advised that plaintiff could perform at a higher level of exertion than what the MSS identified. (Tr. 28.) He afforded "some weight" to the Questionnaire furnished by plaintiff's pulmonologist, Dr. Alpha Desai, because she did not identify any respiratory limitations, but given

plaintiff's need for pulmonologist, the ALJ determined it seemed unlikely that she would not have respiratory limitations. (Tr. 28–29.) The ALJ also afforded "good weight" to the opinions of the two consultative examiners, Dr. Andrea Pollack and Dr. S. Ali. (Tr. 29–30.)

Upon consideration of the evidence, the ALJ found that the plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the evidence. (Tr. 30.) Based on the RFC, the ALJ concluded at step four that plaintiff could not perform her past relevant work as a home health aide or sewing machine operator. (Id.)

Finally, the ALJ relied on the testimony of the vocational expert to determine at step five that there are jobs that exist in significant numbers in the national economy that the claimant can perform. (Tr. 31.) Accordingly, the ALJ found that plaintiff was not under a disability as defined in the Social Security Act from August 15, 2014 through the date of his decision. (Id.)

## II. DISCUSSION

### A. <u>Social Security Disability Standard</u>

Under the Social Security Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled when his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Commissioner's regulations set out a five-step sequential analysis by which an ALJ determines disability. 20 C.F.R. § 404.1520. The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (second alteration in original) (quoting Green–Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). As part of the fourth step, the Commissioner determines the plaintiff's RFC before deciding if the claimant can continue in his prior type of work. 20 C.F.R. § 404.1520(a)(4)(iv). The claimant bears the burden at the first four steps, but at step five, the Commissioner must demonstrate "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009); see also Campbell v. Astrue, No. 12-CV-5051, 2015 WL 1650942, at *7 (E.D.N.Y. Apr. 13, 2015) (citing Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999).

## B.  Scope of Review

In reviewing a denial of disability benefits by the SSA, it is not the function of the district court to review the record *de novo*, but instead to determine whether the ALJ's conclusions "'are supported by substantial evidence in the record as a whole, or are based on an erroneous legal standard.'" Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)).

Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "'To determine whether the findings are supported by substantial evidence, the reviewing court is required to

examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).

Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." State of New York ex rel. Bodnar v. Sec. of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

## C. Analysis

Plaintiff puts forth four arguments in support of her appeal of the ALJ's decision. First, she argues that the ALJ erred in determining her impairments were not medically equivalent to a listed impairment. (Pl.'s Br. 13–19.) Next, plaintiff contends that the ALJ's RFC finding is not based on substantial evidence. (Id. at 19–23.) She further argues that the ALJ failed to properly evaluate her subjective complaints. (Id. at 23–24.) Finally, plaintiff asserts that the Commissioner failed to sustain her burden of establishing that there is other work in the national economy that plaintiff could perform. (Id. at 25.) These arguments are unavailing.

### 1. The ALJ did not Err in Finding that Plaintiff's Impairments Did Not Medically Equal a Listed Impairment.

At step three in the analysis, plaintiff bears the burden to establish that her impairments meet or medically equal a listed impairment. See Campbell, 2015 WL 1650942, at *7 (citing Melville, 198 F.3d at 51) (noting that plaintiff bears the burden of proof at the first four steps); see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (requiring plaintiff to present medical findings to prove symptoms equal a listing). Plaintiff contends that the evidence may support a finding that her SLE equals Listing 14.02(B), which provides:

Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at a marked level:
1. Limitation of activities of daily living.
2. Limitation in maintaining social functioning.
3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Part 404, Subpart P § 14.02B. In support of this argument, plaintiff points to Dr. Lin's MSS wherein he opined that plaintiff has constitutional symptoms of severe fatigue, involuntary weight loss, and malaise; is *moderately limited* in all three areas considered in Listing 14.02; and that her SLE met the American College of Rheumatology criteria for SLE. (Tr. 451–55.) In her papers, plaintiff contends that moderate limitation in all three areas "may well support a finding of medical equivalency" and that the ALJ failed to provide "good reasons" for not crediting Dr. Lin's opinion. (Pl.'s Br. 16–17.)

"For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is equivalent to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan, 493 U.S. at 531 (internal quotations omitted; emphasis in original); see also 20 C.F.R. § 404.1525(c)(3). Plaintiff's bare contention that Dr. Lin's findings "may well support" this finding fails to satisfy this burden. Moreover, plaintiff points to nothing in the record that establishes she had "repeated" manifestations of two of the constitutional symptoms, and the Court finds nothing in the record to support this argument.[3]

---

[3] The Listing defines "repeated" as:

"[T]he manifestations occur on an average of three times a year, or once every 4 months, each lasting 2 weeks or more; or the manifestations do not last for 2 weeks but occur substantially more frequently than three times in a year or once every 4 months; or they occur less frequently than an average of three times a year or once every 4 months but last substantially longer than 2 weeks. Your impairment will satisfy this criterion regardless of whether you have the same kind of manifestation repeatedly, all different manifestations, or any other combination of manifestations; for example, two of the same kind of manifestation and a different one."

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Plaintiff also advances a conclusory argument that because the ALJ failed to provide "good reasons" for not crediting Dr. Lin's opinion on equivalence, her case must be remanded. (Pl.'s Br. 17–18.) However, Dr. Lin did not opine on whether plaintiff's symptoms might medically equal the listing. Plaintiff herself acknowledges that Dr. Lin's MSS only identified *moderate limitations* in the three areas of limitations. (Pl.'s Br. 16.) He made no finding that such moderate limitations medically equals one of the listed limitations at a *marked* level. And nothing in his MSS indicates that he found that plaintiff has "repeated" manifestations of any of the three constitutional symptoms he identified. (See Tr. 451–55.) Thus, even fully crediting Dr. Lin's opinion, it would not support a finding that her symptoms equaled the listing.

Moreover, at the third step of his analysis, the ALJ specifically considered Listing 14.02. (Tr. 25–26.) Contrary to plaintiff's assertion, the ALJ considered ample medical evidence outlined elsewhere in his opinion that supports his finding that Listing 14.02 was not equaled. See Solis v. Berryhill, 692 F. App'x 46, 48 (2d Cir. 2017) (summary order) (citing Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982) (per curiam)) (upholding a finding that a listing was not met even though the ALJ did not explicitly discuss the listing because the ALJ's decision as a whole and record before him supported the conclusion); see also Section II.C.2, infra. Accordingly, the ALJ's determination that plaintiff's limitations did not equal a listed impairment is supported by substantial evidence.

Finally, the Court rejects plaintiff's argument that the ALJ was required to call a medical expert to opine on whether plaintiff equaled Listing 14.02(B). "For cases at the Administrative Law Judge or Appeals Council level, the responsibility for deciding medical equivalence rests with the Administrative Law Judge or Appeals Council." 20 C.F.R § 404.1526(e). Plaintiff cites to various cases outside of this Circuit that interpret the language in Social Security Ruling ("SSR")

96-6p to require such a consulting opinion. (Pl.'s Br. 18–19.) However, "[n]either the Second Circuit nor any district court within it has imposed such a requirement." Colavito v. Comm'r of Soc. Sec., No 15-CV-4657 (E.D.N.Y. Aug. 11, 2016) (Cogan, J.). Indeed, in Colavito, Judge Cogan squarely rejected this requirement.

I agree with Judge Cogan that plaintiff's argument misreads the applicable regulations and would add an unnecessary burden to the process. See id. This is not an unusual case and the Court will not impose a requirement to obtain a medical expert opinion on equivalence every time an ALJ in a single decisionmaker (SDM) state, such as New York, determines that impairments *are not* equivalent. A proper reading of the applicable regulations and the ruling itself indicates that an ALJ only needs to obtain a medical expert opinion when, in the opinion of that ALJ, the record *supports* equivalence. See 20 C.F.R §§ 404.1526(e), 404.906(b); SSR 96-6p (S.S.A. July 2, 1996), 1996 WL 374180. See also Oakes v. Barnhart, 400 F. Supp. 2d 766, 776 (E.D. Pa. 2005) (finding that the introduction of the SDM model "altered the longstanding policy that an ALJ is required to seek a medical opinion on the issue of equivalence"); cf. Clanton v. Comm'r of Soc. Sec., No. 14-CV-1039, 2016 WL 74421, at *8 (W.D. Mich. Jan. 6, 2016) (rejecting opinions that remanded cases where the ALJ did not consult a medical expert on equivalence because they failed to correctly place the burden at step three on the plaintiff).[4]

Accordingly, the ALJ's determination that plaintiff's impairments were not medically equivalent to any of the listings in the Appendix was based on substantial evidence and correct legal principles.

---

[4] Notably, as part of the new SSA regulations that came into effect on March 27, 2017 (but are not applicable to this appeal), the Commissioner rescinded SSR 96-6p and replaced it with SSR 17-2p. (S.S.A. Mar. 27, 2017), 2017 WL 3928306. SSR 17-2p recognizes that in SDM-states, medical experts need not be consulted at the initial stage. Id. n. 7. SSR 17-2p also makes clear that an ALJ does not need to obtain a medical expert opinion to determine that impairments are *not* medically equivalent to a listing, whether or not the initial determination was made by an SDM. Id. at *4.

## 2. The ALJ's RFC Determination is Based on Substantial Evidence.

An RFC determination specifies the "most [a claimant] can still do despite [the claimant's] limitations." Barry v. Colvin, 606 F. App'x 621, 622 n.1 (2d Cir. 2015) (summary order); see Crocco v. Berryhill, No 15-CV-6308, 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017) (stating that an RFC determination indicates the "nature and extent" of a claimant's physical limitations and capacity for work activity on a regular and continuing basis) (citing 20 C.F.R. § 404.1545(b)).

In determining a claimant's RFC, "[t]he Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history." Crocco, 2017 WL 1097082, at *15; see also Barry, 606 F. App'x at 622 n.1 ("In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain.") (quoting 20 C.F.R. § 416.945(a)(3)). An RFC determination must be affirmed on appeal where, as here, it is supported by substantial evidence in the record. Barry, 606 F. App'x at 622 n.1.

The ALJ's decision regarding the weight to be accorded to each medical opinion in the record and how to reconcile conflicting medical opinions is governed by the treating physician rule. 20 C.F.R. § 404.1527(c). According to the treating physician rule, if a treating physician's opinion regarding the nature and severity of an individual's impairments is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ will credit that opinion with "controlling weight." 20 C.F.R. § 404.1527(c)(2); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).

However, an ALJ may discount a treating physician's opinion when the opinion is conclusory, the physician fails to provide objective medical evidence to support his or her opinion,

the opinion is inconsistent with the record, or the evidence otherwise supports a contrary finding. See 20 C.F.R. § 404.1527(c). The ALJ is required to give "good reasons" in support of his determination on the weight given to a treating physician's opinion. See Schaal v. Apfel, 134 F.3d 496, 503–04 (2d Cir. 1998).

Plaintiff contends that the ALJ failed to give the proper weight to treating physician Dr. Desai and consultative examiners Drs. Ali and Pollack because he did not include all the limitations noted by these doctors. (Pl.'s Br. 19–21.) However, the ALJ properly considered and gave weight to the opinions of Dr. Desai, Dr. Pollack, and Dr. Ali. And, contrary to plaintiff's contention, the ALJ did not rely on or even consider the opinions of the non-physician SDMs. Their findings are not cited in the ALJ's decision and "the sheer fact that the ALJ's RFC assessment corresponds with the disability analyst's assessment does not establish that the ALJ gave controlling weight to or otherwise impermissibly relied on the disability analyst's assessment." Negron v. Colvin, No. 15-CV-2515, 2017 WL 1194470, at *9 (E.D.N.Y. Mar. 31, 2017) (internal quotations omitted).

As to Dr. Desai, the ALJ reasonably gave only "some weight" to Dr. Desai's Questionnaire (Tr. 445–48), crediting her opinion that plaintiff had no limitations regarding sitting and could stand/walk 4-6 hours, but not crediting her finding that plaintiff had no restriction in lifting or exposure to environmental irritants. (Tr. 28–29.) The ALJ provided a "good reason" not to credit that part of Dr. Desai's opinion—given that plaintiff needed a pulmonologist, she would have some respiratory limitations. (Tr. 29.)

Plaintiff points out that the ALJ did not expressly address Dr. Desai's finding that plaintiff would need to take unscheduled breaks and have work absences of two days a month. (Pl.'s Br. 21; Tr. 28–29, 445–48.) However, "where 'the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented

to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'"  Petrie v. Astrue, 412 F. App'x 401, 406 (2d Cir. 2011) (summary opinion) (quoting Mongeur, 722 F.2d at 1040).

The record supports the ALJ's decision not to include Dr. Desai's opinion that plaintiff would need to take unscheduled breaks.  First, Dr. Pollack, who also diagnosed plaintiff with chronic chest pain did not opine that this pain would require plaintiff to take unscheduled breaks. (Tr. 262–68.)  Second, Dr. Desai based her opinion that plaintiff would need unscheduled breaks on plaintiff's reports of chest pain, and the ALJ explicitly considered Dr. Desai's noted symptom of "chest pain on occasion with *heavy exertion*."  (Tr. 29 (emphasis added).)  Third, Dr. Desai's Questionnaire apparently relies on her single treatment note which states, in part, that plaintiff "continues to have occasional left sided chest pain when 'doing lots of things' (eg. busy day at work and running the household)."  (Tr. 346.)   Accordingly, there was substantial evidence for the ALJ to conclude that plaintiff's reported symptoms of chest pain do not suggest that she would be unable to perform a reduced range of sedentary work without unscheduled breaks.

The record similarly supports the ALJ's decision not to incorporate Dr. Desai's opinion that plaintiff would have work absences of two days a month.  There is nothing in Dr. Desai's notes or the record as a whole that suggests plaintiff's impairments would prevent her from attending work, particularly since Dr. Desai's treatment note, and many of the other treatment notes, were from before plaintiff left her job as a home health aide and do not document any missed days.  Finally, plaintiff bears the burden of demonstrating her functional limitations, but fails to point to any other evidence in the record to support her contention that the ALJ should have incorporated these limitations into the RFC.  Accordingly, these limitations were properly not included in the RFC assessment.

Turning then to the consultative examiners, the ALJ afforded "good weight" to the opinion offered by Dr. Pollack, but did not incorporate Dr. Pollack's finding that plaintiff "is restricted in activities that require fine visual acuity of the left eye" in his RFC assessment. (Tr. 29–30, 262–67.) Plaintiff argues this resulted in "harmful error" because all the jobs cited by the VE entail at least frequent near acuity so his testimony "may well have differed" had this limitation been included in the ALJ's hypothetical questioning. (Pl.'s Br. 21.)

However, this restriction—which pertained to fine visual acuity, and of the left eye only—is based on Dr. Pollack's examination of plaintiff without her glasses, finding acuity at 20/40 right, 20/50 left, and 20/40 both. (Tr. 263.) Dr. Ali's examination found plaintiff had slightly worse vision without glasses, with acuity of 20/70 right, 20/70 left, and 20/30 both, but, critically, he did not conclude plaintiff had any visual restrictions. (Tr. 228–31.) Similarly, Dr. Desai did not opine that plaintiff had any visual restrictions. (Tr. 445–48.) Thus, both Dr. Desai's and Dr. Ali's opinions constituted substantial evidence that supported the ALJ's RFC determination. Furthermore, plaintiff received a new glasses prescription in January 2016. (Tr. 512–13.) In sum, the ALJ's determination not to include a limitation on plaintiff's visual acuity in his RFC assessment is supported by substantial evidence.

Finally, regarding the opinion offered by Dr. Ali, plaintiff claims that his findings are too vague to provide support for the ALJ's RFC assessment because Dr. Ali opined that plaintiff has "mild restriction for climbing, walking, standing, bending, lifting and carrying because of back pain." (Pl.'s Br. 22; Tr. 30, 232.) However, Dr. Ali did not simply opine that the plaintiff had "mild restrictions." He explained that such restrictions were due to plaintiff's reported back pain. Moreover, Dr. Ali's opinion is not the only medical evidence in the record that supports the ALJ's decision. When Dr. Ali's opinion is coupled with all of the other evidence in the record, there is

certainly sufficient evidence to support the ALJ's RFC finding.  See Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) (determining that a consultative physician's opinion that plaintiff had "mild to moderate limitation for sitting for a long time, standing for a long time, walking for a long distance" together with other evidence, was sufficient to support RFC finding); Lewis v. Colvin, 548 F. App'x 675, 677 (2d Cir. 2013) (summary order) (finding that RFC determination of "light work" was supported by consultative physician's assessment that plaintiff had "mild limitations for prolonged sitting, standing and walking," and needed to avoid "heaving lifting, and carrying," together with other evidence in the record).

Accordingly, the ALJ properly weighed the conflicting medical testimony and the RFC assessment is supported by substantial evidence.

### 3.  The ALJ Properly Evaluated Plaintiff's Subjective Complaints.

Plaintiff's argument that the ALJ's credibility finding was erroneous similarly cannot prevail.  The ALJ followed the two-step inquiry outlined in the regulations and determined that the plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 30.)  The ALJ considered the relevant factors, and his finding is supported by substantial evidence.  (Tr. 27–30.)  For example, in addition to his consideration of the medical evidence discussed in detail above, the ALJ considered that Plaintiff's medication helped maintain her conditions, that she maintained activities of daily living (including cooking, cleaning, shopping, sewing and reading), and that she had a longstanding work history.  (Id.)

The ALJ has the discretion to evaluate and ultimately not credit plaintiff's testimony about the severity of her pain and functional limitations.  See Burnette v. Colvin, 564 F. App'x 20, 605, 609 (2d Cir. 2008) (summary order); Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984).  Here,

the ALJ reasonably weighed the applicable evidence—reviewing the medical records and specifically considering plaintiff's testimony and statements contained in the record. Accordingly, he properly evaluated plaintiff's subjective complaints in determining that plaintiff retained the ability to perform a range of sedentary work.

### 4. The Commissioner Sustained Her Burden at Step Five.

Finally, plaintiff contends that the Commissioner failed to sustain her burden to show that there is other gainful work in the national economy which claimant could perform. This argument also fails. As discussed herein, the ALJ's RFC assessment was supported by substantial evidence. (See Sections II.C.2–3). And as plaintiff acknowledges, the ALJ's hypothetical questioning of the vocational expert tracked his RFC assessment. (Pl.'s Br. at 25.) Accordingly, the ALJ properly relied on the vocational expert in finding at step five that a significant number of jobs existed in the national economy that plaintiff could perform. Snyder v. Colvin, 667 F. App'x 319, 321 (2d Cir. 2016) (summary order) (citing Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir. 1983)).

## III.  CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion for judgment on the pleadings and GRANTS Commissioner's motion for judgment on the pleadings. The Clerk of the court is directed to enter judgment in favor of defendant and close the case.

**SO ORDERED.**

Dated: December 28, 2018
Central Islip, New York

_____/s/ JMA_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE